Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
Laura.Goolsby@capstonelawyers.com
Nathan N. Kiyam (SBN 317677)
Nate.Kiyam@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH BOLDT and LISA JAIME, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>CAESARSTONE USA, INC., a California corporation; IKEA NORTH AMERICA SERVICES, LLC, a Virginia limited liability company; and IKEA US RETAIL LLC, a Virginia limited liability company,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violation of California's Consumer Legal Remedies Act ("CLRA")<br>(2) Violation of California's Unfair Competition Law<br>(3) Breach of Implied Warranty under the Song-Beverly Consumer Warranty Act<br>(4) Breach of Implied Warranty under California Law<br>(5) Breach of Implied Warranty under the Magnuson-Moss Warranty Act<br>(6) Fraudulent Concealment/Omission<br>(7) Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

1.     Plaintiffs Sarah Boldt and Lisa Jaime ("Plaintiffs"), bring this Complaint individually and on behalf of all persons in the United States who purchased the IKEA "KASKER" line of custom quartz countertops or Caesarstone indoor quartz countertops designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by Caesarstone USA, Inc.; IKEA North America Services, LLC; and/or IKEA US Retail LLC ("IKEA," "Caesarstone," or, collectively, "Defendants") ("Class Countertops").

2.     Defendants Caesarstone and IKEA designed, manufactured, marketed, distributed, sold, warranted, and/or serviced the Class Countertops. Plaintiffs allege as follows:

## INTRODUCTION

3.     This is a consumer class action concerning a failure to disclose material facts to consumers.

4.     Defendants manufactured, marketed, distributed, and/or sold the Class Countertops without disclosing that the Class Countertops were defective.

5.     Specifically, Plaintiffs allege that the Class Countertops contain latent design, manufacturing, and/or workmanship defects which cause the countertops to permanently stain, streak, and retain marks from normal use ("the Defect").

6.     Defendant Caesarstone sold the Class Countertops with a limited Residential Lifetime Warranty ("the Warranty"). The Warranty "does not cover routine maintenance" including but not limited to, "minor conditions such as removing stains and water spots by following the techniques specified in the Caesarstone online Care & Maintenance Guidelines at www.CaesarstoneUS.com."  Defendant IKEA refers to a "Limited residential lifetime warranty" for the Class Countertops that "[d]oes not cover wear and tear such as stains, scratches, water spots and burns" or "failure to comply with care instructions."  In sum, Defendants' Warranty does not cover stains and water spots caused by daily use because Defendants claim that routine cleaning according to

their instructions will remove such stains and water spots. However, owners have often complained that stains and spots caused by normal, daily use cannot be removed by following Defendants' care instructions. This is evidenced through Class Member complaints on IKEA's website as well as third-party websites such as Houzz, which demonstrate that Defendants' Warranty does not adequately cover the Defect.

7.     The Defect is inherent in all Class Countertops and was present at the time of sale.

8.     Defendants was aware in at least 2015, and likely several years prior, that the Class Countertops were prone to permanent stains, spots, and marks from normal, daily use that could not be removed by following Defendants' care instructions.

9.     Accordingly, discovery will show that Defendants have known that the Class Countertops were defective and would permanently stain, require frequent replacement, including replacements not covered by warranty, and that the replacement countertops installed would be equally as defective as the originals, yet Defendants continued to manufacture, market, distribute, sell, warrant, and/or service the Class Countertops with the Defect. Moreover, Defendants not only refused to disclose the alleged Defect to consumers, they also actively concealed, and continue to conceal, their knowledge concerning the Defect.

10.     Defendants had superior and/or exclusive knowledge of material facts regarding the Defect due to its pre-production testing, consumer complaints about the Defect made directly to Defendants, aggregate warranty information, early consumer complaints on websites and internet forums, among other internal sources of information about the problem.

11.     Defendants' failure to disclose the Defect has caused Plaintiffs and putative class members to lose the use of their Class Countertops and/or incur

costly repairs to their Class Countertops that have conferred an unjust substantial benefit upon Defendants.

12.    Discovery will show that, in an effort to conceal the Defect, Defendants have told consumers that the Class Countertops are intended to show marks and stains and/or merely require more effort to clean and maintain, or Defendants have given excuses for sub-par performance. Discovery will show that Defendants have instructed their Certified Fabricators ("Fabricators") to say the same.

13.    Had Defendants disclosed the Defect, Plaintiffs and Class Members would not have purchased the Class Countertops or would have paid less for them.

## THE PARTIES

### Plaintiffs Sarah Boldt and Lisa Jaime

14.    Plaintiffs Sarah Boldt and Lisa Jaime ("Boldt and Jaime") are California citizens residing in Los Angeles, California.

15.    In the weeks leading up to June 18, 2023, Boldt and Jaime visited IKEA's showroom in Burbank, California three times to create and finalize a new kitchen design, including picking out their 3cm KASKER Anthracite Stone Effect custom countertops. On information and belief, Caesarstone's name for the countertops that Boldt and Jaime purchased is 4033 Rugged Concrete Dark Grey Quartz Countertop. At no point during those visits did the IKEA salespeople tell Boldt and Jaime that the countertops they had chosen were a Caesarstone product, nor that this product would be more difficult to clean than a polished finish. On or around June 18, 2023, Boldt and Jaime purchased the 3cm KASKER Anthracite Stone Effect custom countertops from the Burbank IKEA location. The countertops were installed in Boldt and Jaime's home on or around August 17, 2023 by a fabricator designated by IKEA: Cassano Marble. At this time, Boldt and Jaime learned that the countertops were manufactured by Caesarstone. Boldt's and Jaime's purchase was based in part on the advertised reliability, and quality of the

CLASS ACTION COMPLAINT

countertops and their components.

16.    Defendants' omissions were material to Plaintiffs Boldt and Jaime. Had Defendants disclosed its knowledge of the Defect before they purchased their countertops, Plaintiffs Boldt and Jaime would have seen and been aware of the disclosures. Furthermore, had they known of the Defect, Plaintiffs Boldt and Jaime would not have purchased their countertops.

17.    At the time of installation, IKEA's designated fabricator, Cassano Marble, gave Boldt and Jaime cleaning instructions for the countertops entitled, "Caesarstone Countertop Care" ("Care Instructions"). Boldt and Jaime cleaned the countertops on a regular basis, in the manner directed by the Care Instructions. In the ensuing days, manifestations of the Defect began appearing. Specifically, the countertops have several marks and stains that do not come out, such as water stains from the bottom of a drinking glass, even after Boldt and Jaime used the "Soft Scrub Liquid Gel with Bleach," as directed in the Care Instructions. In fact, the "Soft Scrub Liquid Gel with Bleach" dulled the sheen around the stain, further demonstrating the Defect.

18.    As a result, on or around August 21, 2023, Boldt and Jaime made the first of many calls to IKEA's designated fabricator, Cassano Marble, and spoke with a Gaby Martinez, who said she had never heard of any issues and told them to just follow the cleaning instructions given to them. Boldt also subsequently emailed pictures of some of the stains to Cassano Marble and asked for assistance. On or around August 30, 2023, employees of Cassano Marble came to Boldt's and Jaime's home to fix marks left on the countertop from their machinery during installation and to add more grouting at the join between the backsplash and the countertop upon Boldt's and Jaime's complaints. At that time, the installers attempted to clean the persistent stains with acetone, but the stains remained. At the time of the visit, it seemed the stain with dulled sheen had been removed, but within an hour or so after the installers left, the stain was visible again. At this

visit, one of the installers said that Boldt's and Jaime's Class Countertops were "very delicate."

19.     Subsequently, Cassano Marble alerted Caesarstone to the issue, to which a Warranty Specialist for Caesarstone, David Golubev replied, "Unfortunately there is little we can do for this as it's a concrete finish which takes more effort to clean than the normal polish product." Cassano Marble then relayed this message to Boldt. Prior to this exchange, neither IKEA nor Caesarstone had told Boldt and Jaime that the countertops they had chosen took more effort to clean.

20.     On or around September 22, 2023, Boldt sent photos of the stubborn marks and stains to Aly Moreno, Kitchen & Bath Services Specialist at IKEA Burbank. Ms. Moreno assured Boldt that she would speak with Caesarstone about the Defect. Boldt followed up with Ms. Moreno on or around October 9, 2023. On or around October 18, 2023, Mr. Golubev emailed Boldt the contact information of a third-party company that Caesarstone recommends for cleaning the countertop: Surface Link. Boldt and Jaime would have to pay Surface Link out-of-pocket for cleanings.

21.     To date, Boldt and Jaime have not received a permanent repair to the Defect under warranty and their countertops continue to exhibit the Defect. Boldt and Jaime have suffered damages as a result of Caesarstone and IKEA's conduct, including but not limited to, loss of the benefit of the bargain they struck when they purchased their countertops.

22.     Further, Boldt and Jaime will be unable to rely on the Class Countertops' advertising or labeling in the future, and so will not purchase other Class Countertops, although they would like to do so.

23.     At all times, Plaintiffs Boldt and Jaime, like all Class Members, have used their countertops in a manner both foreseeable and in which they were intended to be used.

**Defendants IKEA North America Services, LLC and IKEA US Retail LLC**

24.     Defendant IKEA North America Services, LLC is a limited liability company organized and in existence under the laws of the State of Virginia and registered to do business in the state of California. IKEA North America Services, LLC is headquartered in Conshohocken, Pennsylvania.

25.     Defendant IKEA US Retail LLC is a limited liability company organized and in existence under the laws of the State of Virginia and registered to do business in the states of California. IKEA US Retail LLC is headquartered in Conshohocken, Pennsylvania.

26.     Together, Defendants IKEA North America Services, LLC and IKEA US Retail LLC ("IKEA") are a part of a Swedish multinational conglomerate that designs and sells ready-to-assemble furniture, kitchen appliances, decoration, home accessories, and various other goods and home services. IKEA is responsible for manufacturing, sales, marketing, service, distribution, import, and export of IKEA branded products in the United States. IKEA is also a warrantor and a distributor of the Class Countertops throughout the United States.

27.     Discovery will show, IKEA has a contractual relationship with Caesarstone to market and sell Caesarstone branded countertops.

28.     Discovery will show that IKEA also developed and disseminated owner's manuals and warranty booklets, advertisements, and other promotional material relating to the Class Countertops.

**Defendant Caesarstone USA, Inc.**

29.     Defendant Caesarstone USA, Inc. ("Caesarstone") is a corporation organized and in existence under the laws of the State of California and registered to do business in the state of California. Caesarstone USA, Inc. is headquartered in Charlotte, North Carolina.

30.     Caesarstone is public company engaged in producing premium surfaces, such as quartz, since 1987. Caesarstone is responsible for manufacturing,

sales, marketing, service, distribution, import, and export of Caesarstone branded products in the United States. Caesarstone is also the warrantor and a distributor of the Class Countertops throughout the United States.

31. Discovery will show, Caesarstone has a contractual relationship with IKEA that allows the latter to market and sell Caesarstone branded countertops.

32. Discovery will show that Caesarstone also developed and disseminated owner's manuals and warranty booklets, advertisements, and other promotional material relating to the Class Countertops.

## JURISDICTION

33. This is a class action.

34. Members of the proposed Class number more than 100 and at least one plaintiff and one defendant are citizens of different states.

35. There are at least 100 members in the proposed class, and the aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

36. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

37. This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to this Court's jurisdiction. This Court has personal jurisdiction over Defendants because Caesarstone and IKEA conduct substantial business in this District and discovery will show that significant conduct involving Defendants giving rise to the Complaint took place in this District.

## VENUE

38. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the conduct giving rise to this lawsuit occurred here and Defendants are subject to personal jurisdiction here by conducting business within the State of California. Plaintiffs' counsel's Declaration of Venue, to the extent required under California Civil Code section 1780(d), is attached hereto.

**FACTUAL ALLEGATIONS**

39.     Defendants designed, manufactured, distributed, marketed, and/or sold the Class Countertops. Defendants sold, directly or indirectly, many thousands of Class Countertops in California and nationwide. Defendants warrant and service the Class Countertops.

40.     Defendants provided all purchasers of the Class Countertops with the Warranty. The terms of this warranty are non-negotiable and Defendants exercise sole authority in determining whether and to what extent a particular repair is covered under the warranties it offers.

41.     The Warranty provided by Defendants states, in relevant part:

> Caesarstone USA, Inc. will warrant from the original date of installation material that fails due to any manufacturing defect when fabricated and installed by a Caesarstone Certified Fabricator.

> This warranty applies only to materials that have been maintained according to the Caesarstone Care & Maintenance guidelines. Care & Maintenance guidelines are available at www.CaesarStoneUS.com.

> This warranty does not cover routine maintenance. Routine maintenance includes but is not limited to, minor conditions such as removing stains and water spots by following the techniques specified in the Caesarstone online Care & Maintenance Guidelines at www.CaesarstoneUS.com.

42.     Defendants' respective websites boast that the Class Countertops are easy to maintain and resistant to stains.

43.     Caesarstone's website states that their quartz and mineral surfaces are "[e]asy to care, simple to maintain," "essentially effortless to maintain," and "virtually maintenance-free. The website also claims that "most of the marks can be removed with little effort," and "normal cleaning with a damp cloth and mild detergent is all you need to keep your Caesarstone surface looking great."

44.     IKEA's website states that the KASKER custom countertops (manufactured by Caesarstone) are "resistant to stains, scratches, and moisture."

45.     Despite these representations, the Class Countertops are defective

because they are prone to stains, spots, and marks from everyday use that cannot be removed by following Defendants' guidelines.

46.     Discovery will show that all Class Countertops are designed and manufactured by Defendants in substantially the same manner.

47.     Discovery will confirm that the Defect in all Class Countertops is caused by improperly designed and/or manufactured Class Countertops.

48.     The Defect is inherent in, and the same for, all Class Countertops.

49.     Discovery will show that Defendants was aware of material facts regarding the Defect, in particular as a result of pre-production testing, manufacturing quality control audits, and early post-sale complaints by consumers who purchased the Class Countertops and experienced the Defect. Despite this knowledge, Defendants failed to disclose the Defect to consumers. As a result of this failure, Plaintiffs and Class Members have been damaged.

### Consumer Complaints

50.     Complaints posted by consumers on Defendants' websites and on internet forums demonstrate that the Defect is widespread, and that Defendants have not offered a suitable repair/replacement. The complaints also indicate Defendants' awareness of the problems with the Class Countertops to the extent such complaints are posted directly on Defendants' websites and/or reference contact with Defendants themselves. The content, consistency, and disproportionate number of those complaints alerted, or should have alerted, Defendants to the Defect.

51.     The following are a sample of consumer complaints (spelling and grammar mistakes remain as found in the original):

52.     On the KASKER Custom Countertop product page on ikea.com/ca/en, a consumer posted the following on September 15, 2023:

> We purchased the Kasker White countertop and just had it installed about a month ago. After some issues with fabricators, we're really regretting the purchase. Every single item stains the

1    countertop, it was already covered in scratches when installed and
2    now it's gotten worse. Would not recommend. And Ikea, please
3    don't suggest a refund, as those aren't applicable for custom
4    countertops.

5    53.    On the KASKER Custom Countertop product page on ikea.com/en, a
6    consumer posted the following on February 7, 2023:

7    Purchased pure white quartz for our kitchen. There were several
8    chips in the edges when installed, and though the chips were filled
9    with with resin, they are still visible. Dropped a ceramic bowl from
10   about 6" above the edge of the quartz and the quartz chipped, even
11   though the bowl did not chip or break! The countertops seem to
12   stain and blemish more easily than stated by the manufacturer. We
13   have a number of light stains in only a few months, and even
14   watermarks are difficult to remove completely. The edges between
15   joints were difficult to smooth and fill, so are more visible than
16   expected. We would not buy Ikea quartz
17   countertops again.

18   54.    On the KASKER Custom Countertop product page on ikea.com/en, a
19   consumer posted the following on December 9, 2023 and Ikea responded:

20   Consumer: I bought this countertop 4 years ago and it is very easy
21   to get impacts on it. I don't recommend. Vendor behind seems to
22   be Caesarstone

23   Ikea: Thanks for taking the time to review our KASKER custom
24   quartz. Did you know this item has a residential lifetime limited
25   warranty? We recommend reaching out to our certified kitchens
26   team by phone to determine if these defects are covered by the
27   warranty. We hope this information is helpful.

28   55.    On the Caesarstone page on pissedconsumer.com, a consumer posted

1   the following on December 5, 2023, along with a picture:

2          We are seeing water staining around our sink as if it was oil or
3          something. I cant even leave a flower vase with water on counter
4          top without it creating a stain- they are not will to even evaluate
5          the product when I submitted complaint via Home depot- they sent
6          how to care for your countertop! Not happy at all

7
8
9
10
11
12
13   
14
15
16
17
18
19
20
21

22   56.    On the Caesarstone page on pissedconsumer.com, a consumer posted

23   the following on September 10, 2023:

24          Read all the reviews for Caesarstone before choosing it and choose
25          something else. It stains, clouds and chips. Worse, CS doesnt stand
26          by their warranty. We feel duped. We bought the idea of durability
27          and easy maintenance by choosing quartz. Our CS counter is none
28          of this. Theyre stained (spaghetti sauce) and look greasy or cloudy

even after cleaning with a quartz cleaner. Now, not even 4 months in our new kitchen, large chips are randomly showing up. Would never buy again. Wrote to CS- not covered. Major disappointment.

57. On the Caesarstone page on pissedconsumer.com, a consumer posted the following, along with a picture, on August 9, 2021:

We bought a jumbo sized kitchen counter in pure white. Within 1 week there was a coffee stain about one quarter inch by one and one quarter inch that will not come out. We tried everything to get it out and contacted Caesarstone for their assistance to either get the stain out or replace the countertop. Caesarstone sent a rep who essentially tried to clean it with soft scrub (which did not work) and then said they could not be of further assistance. The top also chips easily. End result, I would not recommend this product and brand to anyone. It stains, it chips, and it is expensive. Customer service was nice, but at the end of the day they do not replace their products when they do stain.



CLASS ACTION COMPLAINT

58.     On the Caesarstone page on pissedconsumer.com, a consumer posted the following on May 15, 2018:

> Terrible product and terrible company This is definitely a factual post!! I had my Caesarstone installed and 3 days later had people at the house. 2 drinks (the actual cups) were left on the counter top and not wiped up and no coaster was used. Later when we moved the cups there were 2 ring marks left on the countertop. The ring marks look like they were etched into the countertop, they even have a rough feel to them. I had a rep come to my house to check it out and was told it was defective and they would replace it. Months went by with no calls or emails. Finally after several months of me calling them and no one ever calling me back, I spoke with someone who basically told me the rep that came to my house should've never told me that. She said the ring marks were my fault. To which I said "so am I supposed to use coasters?" She said no you don't have to use coasters. I said then why did that happen and she said she didn't know but she wasn't going to replace it! So basically Caesarstone is NOT a good product to buy! Stick with Granite!!! I had granite for 20 years (and never had a problem) before I just bought this Caesarstone and I want everyone to know how terrible of a product Caesarstone is and how terrible of a company they are for doing nothing and telling me it was all my fault! If you are CRAZY enough to buy Caesarstone, never put anything on the countertop (hot or cold) without using trivets, coasters, or some kind of protection! Something is definitely wrong with this product if you have to treat it this way!!

59.     On the Caesarstone page on pissedconsumer.com, a consumer posted the following on June 23, 2015:

> I have stains in 2 of my bathrooms. They have sent a few people out

to try and get the stains out with no luck. After the last visit by a so-called specialist from New York who also could not get the stains out, they sent me a letter stating that the problem was caused by water sitting on the counter top. Caesastone is supposed to be non-porous and stain resistant, How can they sell it for kitchens and bathrooms if water stains it?!!! I was told I had a Lifetime Warranty yet they continue to blame the customer rather than the product. Things go wrong in production sometimes but Caesarstone will continue to make excuses and put the blame on the buyer. DO NOT BUY THIS PRODUCT

60.     On the Caesarstone page on pissedconsumer.com, a consumer posted the following on June 14, 2021:

I echo all the comments here about avoiding Cesarstone products! Their claims about their countertops being easy to clean are outright misleading and so inaccurate in my opinion. I purchased the Empira Black quartz countertop, and not even the cleaning priducts recommended to me by Caesarstone could remove the fingerprints and stains.….let alone the warm water and soap which their website says is all that is needed to clean the counterttop. And I hadn't even started to cook yet and fully use the kitchen, so I can only imagine what marks that would have left. Even simple water marks and wipe marks were clearly visible, and ghost marks would appear. fingerprints could not be removed. i was so dissatisfied with the product, that I replaced it with a Silestone countertop so my reno could be finished.….a much much better product (and customer experience) in my opinion. Caesarstone has not even acknowldeged the problem and say the defective product is not covered by warranty. Very short sighted, as

now my decorator and contractor, and everyone in their networks,, will avoid using Caesarstone going forward based on this experience.

So for anyone who is thinking of using Caesarstone, i would suggest you think twice.and look at other quartz products.

61.     In a discussion titled "Caesarstone Countertops Reviews - The Good and Bad?" on houzz.com, consumers had the following exchange and, notably, Caesarstone responded:

Consumer 1: I had Caesar stone countertops installed. Within a couple of days, they were stained. They are truly atrocious. Hard to clean. Marks very easily. Caesar stone has denied any responsibility, even though the finish is not what I ordered.

Consumer 2: Agreed, the CS honed countertop I had installed was crap, couldn't be cleaned and maintained properly (let alone easily as stated on its website) and definitely not fit for use in a kitchen. But as reported by many here, CS denies any responsibility....no doubt because if it did accept responsibility, it would be flooded with claims and go bankrupt. So all we can do is contine to spread the word here, elsewhere on social media, and within the design and contractor community about the horrendous product and customer service....and hopefully its sales will suffer. I agree with the person that said CS's actions are outright theft. Has anyone heard of a class action suit being brought against CS?

Consumer 3: I reached out to CS to say the stains were impossible to deal with and I wondered if I could somehow have it coated with something to make it work. They said that would void the warranty and recommended I address stains with a mix of Barkeeper's Friend and Soft Soap. I wrote back asking how I could get action on that

warranty as their product is inferior. That was a week ago. No response. I'm not seriously going to pursue it because it sounds like others have tried and lost. If there's ever a class action suit, I'm in.

Consumer 4: You should not be required to use BF or SS for every drop of water that has dried on the counter! I sent an email asking for their assessment and recommendation for dealing with the issue LAST YEAR and received no response. I'm also in if a class action is brought.

Caesarstone: We thank everyone for sharing their experiences and engaging about Caesarstone products. We apologize if these experiences have been poor and hope those have been addressed for everyone. For any cleaning issues, we recommend reviewing our website (https://www.caesarstoneus.com/care-maintenance/quartz-mineral-surfaces/) where we have recommendations, videos and instructions on how to maintain your countertops. Please note that Honed, Concrete, and Rough finishes require more cleaning than our Polished finishes. Since there is a more exposed surface area with these finishes, metal marks, fingerprints, and other signs of daily living will show. However, most of these marks can be removed with little effort and non-abrasive cleaning products such as Soft Scrub Liquid Gel. Quartz is very durable being resistant to cracks, scratches, and stains but is it indestructible? No. Typically, chips can happen along the edges from pressure and/or force with a sharp object. This is something that can be discussed with your fabricators prior to fabrication as our products can have different shape edges. Chips can be fixed by restoration companies as well. Again, we thank everyone for reaching out and feel free to reach out to us via our website. We would be happy to answer any questions you have while shopping for

your new kitchen material. If you have any further concerns or questions, please reach out to us at

https://www.caesarstoneus.com/contact-us/

**Defendants Had Superior and Exclusive Knowledge of the Defect**

62.     Defendants had superior and exclusive knowledge of the Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased the Class Countertops.

63.     Discovery will show that before Plaintiffs purchased their Class Countertops, and since at least 2015, Defendants knew the Class Countertops were defective, and Defendants knew about the Defect through sources not available to consumers, including pre-release testing data, early consumer complaints directly to Defendants and consumer internet forums monitored by Defendants, replacement part sales and warranty claims data, and through other aggregate data from Defendants' installers, repair services, and customer service departments about the problem.

64.     Defendants are experienced in the design and manufacture of countertop surfaces. Discovery will show that Defendants conduct tests, including pre-sale durability testing, on incoming components, including the Class Countertops, to verify the countertops are free from defect and align with Defendants' specifications. Discovery will show that Defendants' warranty departments also analyze and collect data to identify warranty trends in their products. Thus, Defendants knew or should have known the Class Countertops were defective.

65.     The existence of the Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase the Class Countertops. Had Plaintiffs and other Class Members known of the Defect, they would have paid less for the Class Countertops or would not have purchased them.

66.     Reasonable consumers, like Plaintiffs, expect that custom countertops are free from defects. Plaintiffs and Class Members further reasonably expect that Defendants will not sell countertops with known defects, such as the Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Defendants to conceal and fail to disclose the Defect to them, and to then continually deny its existence.

**Defendants Has Actively Concealed the Defect**

67.     Despite their knowledge of the Defect in the Class Countertops, Defendants actively concealed the existence and nature of the defect from Plaintiffs and Class Members. Specifically, Defendants failed to disclose or actively concealed at and after the time of purchase or repair:

(a)     any and all known material defects or material nonconformity of the Class Countertops, including the defects pertaining to staining;

(b)     that the Class Countertops were not in good working order, were defective, and were not fit for their intended purposes; and

(c)     that the Class Countertops were defective, despite the fact that Defendants learned of such defects as early as 2015, if not earlier.

68.     Discovery will show that when consumers seek repair, replacement, or other redress for their defective Class Countertops from Defendants, , rather than repair the problem under warranty, Defendants either inform consumers that their countertops are just harder to clean, that the stains are the fault of the consumer, or conduct repairs and cleaning that do not eliminate the stains and merely temporarily mask the Defect.

69.     Defendants have caused Plaintiffs and Class Members to expend money and/or time to clean, repair, or replace the Class Countertops, despite

1    Defendants' knowledge of the Defect.

2    ### Defendants Have Unjustly Retained a Substantial Benefit

3    70.    Discovery will show that Defendants unlawfully failed to disclose

4    the alleged defect to induce Plaintiffs and other putative Class Members to purchase

5    the Class Countertops.

6    71.    Plaintiffs further allege that Defendants thus engaged in deceptive

7    acts or practices pertaining to all transactions involving the Class Countertops,

8    including Plaintiffs'.

9    72.    As discussed above, therefore, Plaintiffs allege that Defendants

10   unlawfully induced them to purchase their Class Countertops by concealing a

11   material fact (the Defect) and that they would have paid less for the Class

12   Countertops, or not purchased them at all, had they known of the Defect.

13   73.    Accordingly, Defendants' ill-gotten gains, benefits accrued in the

14   form of increased sales and profits resulting from the material omissions that did -

15   and likely will continue to - deceive consumers, should be disgorged.

16   ### Defendants' Warranties were Unconscionable

17   74.    Plaintiffs signed a sales contract for the Class Countertops with

18   Defendants, and with that sale, were presented with a separate Warranty as drafted

19   by Caesarstone. Plaintiffs had no ability to negotiate the terms of the Warranty.

20   Plaintiffs had no bargaining power with respect to the Warranty, were presented

21   with it as a *fait accompli*, and had to accept it in the exact form in which it was

22   presented to them, which occurred after the purchase transaction was completed.

23   Plaintiffs had no meaningful choice regarding any aspect of the Warranty or its

24   terms. The terms of the Warranty unreasonably favored Defendants over Plaintiffs

25   and the members of the Class; a gross disparity in bargaining power existed as

26   between Defendants and Class members; and Defendants knew or should have

27   known that the Defect would manifest in the Class Countertops, thereby rendering

28   the terms insufficient, inadequate, and unconscionable.

75.     Defendants drafted the terms of the Warranty in part by using their exclusive, superior knowledge of the existence and likely manifestation of the Defect. Plaintiffs and Class Members were entirely ignorant of the Defect when purchasing their Countertops and when presented with the Warranty. Plaintiffs' acceptance of the Warranty and its terms, including any disclaimers, was neither knowing nor voluntary. Defendants knew or should have known at the time of sale that the Class Countertops were defective solely because of a defect in design, materials, and/or workmanship, to wit, the Defect. Plaintiffs and Class Members, on the other hand, had no notice of or ability to detect the Defect prior to purchasing the Class Countertops. For this reason, the terms of the Warranty unreasonably favored Defendants over Plaintiffs and Class Members.

## TOLLING OF THE STATUTES OF LIMITATIONS

76.     Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and Class Members were deceived regarding the Class Countertops and could not reasonably discover the Defect or Defendants' deception with respect to the Defect. Defendants and its agents continue to deny the existence and extent of the Defect, even when questioned by Plaintiffs and Class Members.

77.     Plaintiffs and Class Members did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a defect and/or that the Class Countertops contained the Defect. As alleged herein, the Defect's existence was material to Plaintiffs and Class Members at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence the Defect's existence or that the Defendants were concealing the Defect.

78.     At all times, Defendants are and were under a continuous duty to

disclose to Plaintiffs and Class Members the true standard, quality, and grade of the Class Countertops and to disclose the Defect and superior knowledge of the existence and extent of the Defect in Class Countertops.

79.   Defendants knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiffs and Class Members reasonably relied on Defendants' knowing, active, and affirmative concealment.

80.   For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment, and Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

81.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

82.   The Class and Sub-Classes are defined as:

> **Class**:  All persons and entities in the United States who purchased the Class Countertops (the "Nationwide Class" or "Class").
>
> **California Sub-Class**:  All persons and entities who purchased the Class Countertops in the State of California.
>
> **CLRA Sub-Class**:  All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

83.   Excluded from the Class and Sub-Classes are:  (1) Defendants, any entity or division in which Defendants has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding

state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Classes should be expanded or otherwise modified.

84. <u>Numerosity</u>: Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control.

85. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased Class Countertops designed, manufactured, and distributed by Defendants. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing the defective Class Countertops. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

86. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

> (a) Whether Class Countertops suffer from defects relating to staining;
>
> (b) Whether Defendants knew about the defects pertaining to staining, if so, how long Defendants have known of the defect;
>
> (c) Whether the defective nature of the Class Countertops

1     constitutes a material fact;

2     (d)   Whether Defendants have had an ongoing duty to disclose the

3           defective nature of the Class Countertops to Plaintiffs and

4           Class Members;

5     (e)   Whether Plaintiffs and the other Class Members are entitled to

6           equitable relief, including a preliminary and/or a permanent

7           injunction;

8     (f)   Whether Defendants knew or reasonably should have known of

9           the defects pertaining to the Class Countertops before it sold

10          them to Class Members;

11    (g)   Whether Defendants should be declared financially responsible

12          for notifying the Class Members of problems with the Class

13          Countertops and for the costs and expenses of repairing and

14          replacing the defective countertops;

15    (h)   Whether Defendants are obligated to inform Class Members of

16          their right to seek reimbursement for having paid to diagnose,

17          repair, or replace their defective countertops;

18    (i)   whether Defendants' representations and omissions about the

19          true defective nature of the Class Countertops were likely to

20          mislead or deceive, and therefore fraudulent, within the

21          meaning of California's Unfair Competition Law ("UCL");

22    (j)   Whether Defendants' representations and omissions about the

23          true defective nature of the Class Countertops were and are

24          unfair within the meaning of the UCL;

25    (k)   Whether Defendants breached the implied warranty of

26          merchantability under California law; and

27    (l)   Whether Defendants breached the implied warranty of

28          merchantability pursuant to the Magnuson-Moss Warranty

Act.

87.   <u>Adequate Representation</u>:   Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to vigorously prosecute this action.

88.   <u>Predominance and Superiority</u>:   Plaintiffs and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue unabated without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

## **FIRST CAUSE OF ACTION**

**Violation of California's Consumer Legal Remedies Act ("CLRA"),**

**Cal Civ. Code § 1750,** *et seq.*

**(On behalf of the CLRA Sub-Class)**

89.   Plaintiffs incorporate by reference each allegation set forth above.

90.   Plaintiffs Sarah Boldt and Lisa Jaime ("Plaintiffs") bring this cause of action individually and on behalf of the members of the CLRA Sub-Class.

91.   Defendants are "person[s]" as defined by the CLRA. Cal. Civ. Code § 1761(c).

92.     Plaintiffs and CLRA Sub-Class Members are "consumers" within the meaning of the CLRA. Cal. Civ. Code § 1761(d).

93.     The purchase of Class Countertops by Plaintiffs and the CLRA Sub-Class Members constitute "transactions" as defined by the CLRA. Cal. Civ. Code § 1761(e).

94.     The Class Countertops constitute "goods" or "services" as defined by the CLRA. Cal. Civ. Code § 1761(a) and (b).

95.     Plaintiffs and the CLRA Sub-Class Members purchased the Class Countertops primarily for personal, family, and household purposes as meant by the CLRA. Cal. Civ. Code § 1761(d).

96.     Defendants' representations, active concealments, omissions, and failures to disclose regarding the Class Countertops violated the CLRA in the following ways:

97.     Defendants misrepresented the Class Countertops had characteristics, uses, or benefits Class Countertops did not in fact have (Cal. Civ. Code § 1770(a)(5));

98.     Defendants misrepresented that the Class Countertops were of a particular standard, quality, or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

99.     Defendants advertised the Class Countertops with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

100.    Defendants misrepresented that the Class Countertops and the warranties conferred or involved rights, remedies, or obligations that they did not (Cal. Civ. Code§ 1770(a)(14)); and

101.    Defendants misrepresented that the Class Countertops were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

102.    Defendants repeatedly engaged in these unfair and deceptive acts or

practices in the course of its trade or business. These acts or practices were material, capable of deceiving a substantial portion of the purchasing public, and caused economic harm to purchasers of the Class Countertops, including the Plaintiffs.

103.   By at least 2015, and well before the sale of Class Countertops, Defendants knew or should have known about the Defect affecting the Class Countertops. Defendants further knew or should have known that the Class Countertops were defectively designed or manufactured, that, as a result of this defect, the Class Countertops would stain in a manner that could not be removed by following Defendants' guidelines.

104.   Defendants had exclusive knowledge of material facts concerning the existence of the Defect in the Class Countertops, and actively concealed that defect from consumers. It did so by denying the existence of a Defect to consumers—such as Plaintiffs—who contacted Defendants about the stubborn stains, water spots, and marks. Defendants also concealed the Defect by failing to provide an effective and permanent remedy to all of the Class Countertops.

105.   Defendants were under a duty to Plaintiffs and the CLRA Sub-Class Members to disclose the defective nature of the Class Countertops, as well as the associated costs that would have to be repeatedly expended in order to temporarily address the failures caused by the Defect, because:

106.   Defendants were in a superior position to know the true state of facts about the Defect in the Class Countertops;

107.   Plaintiffs and the CLRA Sub-Class Members could not reasonably have been expected to learn or discover that the Class Countertops suffered from the Defect until, at the earliest, the manifestation of the Defect; and

108.   Defendants knew that Plaintiffs and CLRA Sub-Class Members could not reasonably have been expected to learn or discover the Defect prior to its manifestation.

109.   In failing to disclose the defective nature of the Class Countertops, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

110.   The facts concealed or not disclosed by Defendants to Plaintiffs and the CLRA Sub-Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase Class Countertops. Moreover, a reasonable consumer would consider the Defect to be an undesirable quality, as Plaintiffs and the CLRA Sub-Class Members did. Had Plaintiffs and other Class Members known that the Class Countertops had the Defect, they would not have purchased Class Countertops or would have paid less for them.

111.   Plaintiffs and the CLRA Sub-Class Members are reasonable consumers who did not expect their Class Countertops to contain a defect. It is a reasonable and objective consumer expectation for consumers to expect that countertops will not permanently stain from normal, day to day use.

112.   As a result of Defendants' misconduct, Plaintiffs and CLRA Sub-Class Members have been harmed in that the Class Countertops contain the Defect.

113.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the CLRA Sub-Class Members have suffered and will continue to suffer harm in that they have defective Class Countertops, for which Defendants have refused to provide an effective and permanent fix.

114.   Plaintiffs and the CLRA Sub-Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and equitable relief under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

115.   Plaintiffs provided Defendants with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a). Defendants failed to provide appropriate relief for their violations of the CLRA. Accordingly, California

Plaintiffs now seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief that they seek on behalf of themselves and the CLRA Sub-Class.

**SECOND CAUSE OF ACTION**

**Violation of California's Unfair Competition Law,**

**Cal. Bus. & Prof. Code § 17200, *et seq.***

**(On behalf of the California Sub-Class)**

116.   Plaintiffs incorporate by reference each allegation set forth above.

117.   Plaintiffs bring this cause of action individually and on behalf of Class Members.

118.   California Business & Professions Code § 17200 prohibits "unfair competition" including any "unlawful, unfair, or fraudulent business practice" and "unfair, deceptive, untrue or misleading advertising." Defendants engaged in conduct that violated each of this statute's three prongs.

119.   Defendants committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by systematically breaching its warranty obligations and by violating the CLRA and the Song-Beverly Consumer Warranty Act as alleged above and below.

120.   Defendants committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, because the acts and practices described herein, including but not limited to Defendants' failure to provide a permanent remedy to fix the Defect, were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class Members. Defendants' acts and practices were additionally unfair because the harm to Plaintiffs and Class Members is substantial and is not outweighed by any countervailing benefits to consumers or competition. Further, Defendants' acts and practices were unfair in that they were contrary to legislatively declared or public policy.

CLASS ACTION COMPLAINT

121.   Defendants committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it concealed the existence and nature of the Defect, while representing in its marketing, advertising, and other broadly disseminated representations that the Class Countertops were high quality and functional when, in fact, the Defect inhibits the quality and functionality of the Class Countertops. Defendants' representations, omissions, and active concealments about the Defect are likely to mislead the public with regard to the true defective nature of Class Countertops.

122.   Defendants' unfair or deceptive acts or practices occurred repeatedly in the course of Defendants' trade or business, and were likely to mislead a substantial portion of the purchasing public.

123.   Plaintiffs relied on Defendants' material representations and nondisclosures and would not have purchased, or would have paid less for, the Class Countertops had they known the truth.

124.   As a direct and proximate result of Defendants' unfair, unlawful, and deceptive practices, Plaintiffs have lost money.

125.   Plaintiffs would consider purchasing similar Defendants' branded countertops in the future if Plaintiffs could rely on Defendants' representations regarding the countertops .

126.   Plaintiffs and Class Members seek an order enjoining Defendants from committing such unlawful, unfair, and fraudulent business practices, and seek restitution pursuant to Cal. Bus. & Prof. Code § 17203.

## THIRD CAUSE OF ACTION

**Breach of Implied Warranty**

**Under the Song-Beverly Consumer Warranty Act**

**Cal. Civ. Code §§ 1790, *et seq.***

**(On behalf of the California Sub-Class)**

127.   Plaintiffs incorporate by reference each allegation set forth above.

128.   Plaintiffs bring this cause of action individually and on behalf of California Class Members.

129.   Defendants' Class Countertops are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

130.   Defendants are manufacturers and/or distributors within the meaning of Cal. Civ. Code § 1791(j).

131.   Plaintiffs and Class Members who purchased their Class Countertops within the State of California are "buyers" and within the meaning of Cal. Civ. Code §§ 1791(b) and (h).

132.   Defendants impliedly warranted to Plaintiffs and Class Members that its Countertops were "merchantable" within the meaning of Cal. Civ. Code §§ 1791(a) and 1792.

133.   Defendants impliedly warranted to Plaintiffs and Class Members that it would repair or replace any defective products.

134.   The propensity of the Defect to stain despite regular upkeep according to Defendants' cleaning guidelines renders the Class Countertops to not be of the quality that a buyer would reasonably expect, and therefore not merchantable.

135.   The Defect is latent and was present at the time of the sale of Class Countertops, and therefore the Countertops were not merchantable at the time of sale.

136.   The Class Countertops do not conform to the promises and affirmations of fact made by Defendants in their promotional materials, cleaning guidelines, websites, and owner manuals.

137.   In violation of Cal. Civ. Code § 1791(a), Defendants breached their implied warranty by selling defective Class Countertops and refusing to permanently replace the defective countertops with non-defective countertops and/or repair the defective countertops.

138.   The Defect has deprived Plaintiffs and Class Members of the benefit

of their bargain, and has caused the Class Countertops to depreciate in value.

139. Any attempt by Defendants to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void pursuant to Cal. Civ. Code §§ 1790.1, 1792.3, and 1793.

140. As a result of Defendants' breach of its implied warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial and are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, pursuant to Cal. Civ. Code §§ 1794 and 1795.4.

## FOURTH CAUSE OF ACTION

### California Breach of Implied Warranty

### (On behalf of the California Sub-Class)

141. Plaintiffs incorporate by reference each allegation set forth above.

142. Plaintiffs bring this cause of action individually and on behalf of California Class Members.

143. The Class Countertops are and were at all relevant times "goods" within the meaning of, *inter alia*, Cal. Com. Code §§ 2105(1) and 10103(a)(8).

144. Defendants were and were at all relevant times "merchant[s]" with respect to the Class Countertops, under, *inter alia*, Cal. Com. Code §§ 2104(1) and 10103(c), and "seller[s]" of the Class Countertops, under § 2103(1)(d).

145. Plaintiffs and Class Members are "buyers" within the meaning of, *inter alia*, Cal. Com. Code §§ 2103(a).

146. When it sold its Class Countertops, Defendants extended an implied warranty to Class Members that the Class Countertops were merchantable and fit for the ordinary purpose for which they were sold, pursuant to Cal. Com. Code §§ 2314, 10212, and 10214.

147. Because Plaintiffs and the California Sub-Class Members purchased their Class Countertops directly from Defendant Ikea, they are in privity with Ikea.

Because Plaintiffs and the California Sub-Class Members purchased their Class Countertops from Defendant Caesarstone's authorized distributor (Ikea), they are also in privity with Caeserstone. Plaintiffs and the California Sub-Class Members have had sufficient direct dealings with Defendants and their authorized distributors for the purposes of fulfilling their responsibilities under limited lifetime warranty to establish privity of contract between Defendants, on one hand, and Plaintiffs and the California Sub-Class Members, on the other hand. Furthermore, Defendants provided warranties directly to Plaintiffs and the California Sub-Class Members and Plaintiffs and the California Sub-Class Members are the intended beneficiaries of Defendants' express and implied warranties. Authorized distributors were not intended to be the ultimate consumers of the Class Countertops and have no rights under the warranty agreements provided with the Class Countertops; the warranty agreements were designed for and intended to benefit the consumer only.

148. Nonetheless, privity is not required here because Plaintiffs and the California Sub-Class Members are the intended third-party beneficiaries of contracts between Defendants and its authorized distributors. These contracts give the distributors the right to sell the Class Countertops, as well as to service and perform warranty replacements on Defendants' behalf. Plaintiffs and the California Sub-Class Members are the beneficiaries of these contracts, because they are the intended end-consumers and users of the products Defendants distribute through their authorized distributors.

149. Plaintiffs and other Class Members who purchased Class Countertops directly from Defendants are entitled to the benefit of their bargain: countertops that do not stain from normal, day to day use despite regular cleaning according to Defendants' guidelines.

150. Defendants breached this implied warranty in that its Class Countertops are (1) not fit for ordinary use, and (2) not of a merchantable quality.

151.   The Defect is latent and was present at the time of the sale, and therefore the Countertops were not merchantable at the time of the sale.

152.   Had the Defect that existed at the time of sale been known, the Class Countertops would not have been sold or would not have been sold at the same price for which Class Members paid.

153.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

**(Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)**

**(On Behalf of the Class, or, in the Alternative, on Behalf of All Sub-Classes Against Defendants)**

154.   Plaintiffs incorporate by reference each allegation set forth above.

155.   Plaintiffs bring this cause of action on behalf of themselves and the Class against Defendants.

156.   The Class Countertops are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

157.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

158.   Defendants were "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

159.   Defendants impliedly warranted that the Class Countertops were of merchantable quality and fit for use. This implied warranty included, among other things: (i) a warranty that the Class Countertops manufactured, supplied, distributed, and/or sold by Defendants would be reliable; and (ii) a warranty that the Class Countertops would be fit for their intended use.

160.   Contrary to the applicable implied warranties, the Class Countertops

at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable and durable indoor surfaces. Instead, the Class Countertops are defective.

161.   Defendants' breach of implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

162.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

163.   Defendants have been afforded a reasonable opportunity to cure their breach, including when Plaintiffs and Class members complained to Defendants via phone and email about the Defect.

164.   As a direct and proximate cause of Defendants' breach of implied warranties, Plaintiffs and Class Members sustained and incurred damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

165.   As a result of Defendants' violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred damages.

166.   Plaintiffs also provided notice to Defendants of their breach of warranty claims under the MMWA by letters dated December 5, 2023.

## SIXTH CAUSE OF ACTION

**(For Fraud by Omission or Fraudulent Concealment)**

**(On Behalf of the Class, or, in the Alternative, on Behalf of All Sub-Classes Against Defendants)**

167.   Plaintiffs incorporate by reference each allegation set forth above.

168. Plaintiffs bring this cause of action on behalf of themselves and the Class or, alternatively, on behalf of all Sub-Classes against Defendants.

169. Defendants knew that the Class Countertops suffered from an inherent Defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

170. Defendants concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Countertops.

171. Defendants was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Countertops because:

      a.    Defendants were in a superior position to know the true state of facts about the defect contained in the Class Countertops;

      b.    The omitted facts were material because they directly impact the central function of the Class Countertops;

      c.    Defendants knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiffs and Class Members;

      d.    Defendants made partial disclosures about the quality of the Class Countertops without revealing their true defective nature; and,

      e.    Defendants actively concealed the defective nature of the Class Countertops from Plaintiffs and Class Members.

172. The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase Defendants' Class Countertops or pay a lesser price for them. Whether countertops are defective, causing permanent stains from normal, day to day use despite routine maintenance per Defendants' cleaning guidelines is a material concern. Had Plaintiffs and Class Members known about the defective nature of the Class

Countertops, they would not have purchased the Class Countertops or would have paid less for them.

173.    Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Countertops to induce Plaintiffs and Class Members to act thereon. Plaintiffs and the other Class Members justifiably relied on Defendants' omissions to their detriment. This detriment is evident from Plaintiffs and Class Members' purchase of Defendants' defective Class Countertops.

174.    Defendants continued to conceal the defective nature of the Class Countertops even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

175.    As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages. Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase of the defective Countertops and obtain restitution or (b) affirm their purchase of the defective Countertops and recover damages.

176.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## SEVENTH CAUSE OF ACTION

### (For Unjust Enrichment)

### (On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes Against Defendants)

177.    Plaintiffs incorporate by reference each allegation set forth above.

178.    Plaintiffs bring this cause of action on behalf of themselves and the Class or, alternatively, on behalf of all Sub-Classes against Defendants.

179.   Defendants has received and retained a benefit from Plaintiffs and Class Members, and inequity has resulted.

180.   As a direct and proximate result of Defendants' failure to disclose known defects, Defendants have profited through the sale of the Class Countertops, the value of which was artificially inflated by Defendants' concealment of and omissions regarding the Defect. Defendants charged higher prices for the countertops than the countertops' true value, and Plaintiffs and Class Members thus overpaid for the Class Countertops.

181.   Additionally, as a direct and proximate result of Defendants' failure to disclose known defects in the Class Countertops, Plaintiffs and Class Members have countertops that require repeated, high-cost repairs and/or replacements that can and therefore have conferred an unjust substantial benefit upon Defendants.

182.   Defendants has been unjustly enriched due to the known defects in the Class Countertops through the use of money paid that earned interest or otherwise added to Defendants' profits when said money should have remained with Plaintiffs and Class Members.

183.   Plaintiffs and Class Members were not aware of the true facts regarding the Defect in the Class Countertops and did not benefit from Defendants' unjust conduct.

184.   As a result of the Defendants' unjust enrichment, Plaintiffs and Class Members have suffered damages.

185.   Plaintiffs do not seek restitution under their unjust enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of its unjust conduct.

186.   Additionally, Plaintiffs seek injunctive relief to compel Defendants to offer, under warranty, remediation solutions that Defendants identify. Plaintiffs also seek injunctive relief enjoining Defendants from further deceptive distribution and sales practices with respect to the Class Countertops, enjoining

Defendants from selling the Class Countertops with the misleading information; compelling Defendants to provide Class members with a replacements that do not contain the defects alleged herein; and/or compelling Defendants to reform their warranties, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranties have been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

## RELIEF REQUESTED

187. Plaintiffs, on behalf of themselves and all others similarly situated, request the Court enter judgment against Defendants, as follows:

    (a) An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

    (b) A declaration that Defendants is financially responsible for notifying all Class Members about the defective nature of the Class Countertops;

    (c) An order enjoining Defendants from further deceptive distribution and sales practices with respect to Class Countertops; compelling Defendants to issue a voluntary recall for the Class Countertops pursuant to 49 U.S.C. § 30118(a); compelling Defendants to repair and eliminate the Defect from all Class Countertops; enjoining Defendants from selling the Class Countertops with the misleading information; and/or compelling Defendants to reform their warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

    (d) An award to Plaintiffs and the Class for compensatory,

exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e)   Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(f)   Any and all remedies provided pursuant to the causes of action and statutes alleged herein;

(g)   A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Class Countertops or make full restitution to Plaintiffs and Class Members;

(h)   An award of attorneys' fees and costs, as allowed by law;

(i)   An award of pre-judgment and post-judgment interest, as provided by law;

(j)   Leave to amend the Complaint to conform to the evidence produced at trial; and

(k)   Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

188.   Pursuant to Federal Rule of Civil Procedure 38(b) and Central District of California Local Rule 38-1, Plaintiffs hereby demand a trial by jury of all issues in this action so triable.

Dated:  March 21, 2024                    Respectfully submitted,

Capstone Law APC

By: /s/ Laura E. Goolsby
    Tarek H. Zohdy
    Cody R. Padgett
    Laura E. Goolsby
    Nathan N. Kiyam

Attorneys for Plaintiffs

CLASS ACTION COMPLAINT