O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH BOLDT and LISA JAIME,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>CAESARSTONE USA, INC. and IKEA US RETAIL LLC,<br><br>　　　　　　Defendants. | Case No.: 2:24-cv-02343-MEMF-AJR<br><br>**ORDER GRANTING IN PART MOTIONS TO DISMISS [ECF NOS. 17, 20]** |

　　Before the Court are the Motions to Dismiss filed by Defendants Caesarstone USA, Inc. and IKEA US Retail LLC. ECF Nos. 17, 20. For the reasons stated herein, the Court hereby GRANTS IN PART the Motions.[1]

/ / /

/ / /

---

[1] On November 13, 2024, the Court deemed this matter appropriate for resolution without oral argument and vacated the hearing. ECF No. 27; *see also* C.D. Cal. L.R. 7-15.

I. **Background**

    A. **Factual Allegations**[2]

    Around June 18, 2023, Plaintiffs Sarah Boldt and Lisa Jaime ("Plaintiffs") purchased 3cm KASKER Anthracite Stone Effect custom countertops from Defendant IKEA US Retail LLC's ("IKEA") Burbank location. Compl. ¶ 15. Plaintiffs had visited the location three times prior leading up to their purchase, and at no point did IKEA salespeople tell Plaintiffs that the countertops they had chosen were a product from Defendant Caesarstone USA, Inc. ("Caesarstone"), nor that the product would be more difficult to clean than a polished finish. *Id.* The countertops were installed in Plaintiffs' home around August 17, 2023, by a fabricator designated by IKEA: non-party Cassano Marble. *Id.* It was only at this time that Plaintiffs learned that the countertops were manufactured by Caesarstone. *Id.* At the time of the installation, Cassano Marble gave Plaintiffs cleaning instructions for the countertops entitled "Caesarstone Countertop Care." *Id.* ¶ 17. Plaintiffs cleaned the countertops on a regular basis in the manner directed by the cleaning instructions. *Id.* However, the countertops began to accrue permanent marks and stains that did not come out from normal use (the "Defect"), such as water stains from the bottom of a drinking glass. *Id.*

    On or around August 21, 2023, Plaintiffs called Cassano Marble and were told to follow the cleaning instructions. *Id.* ¶ 18. Boldt emailed pictures of some of the stains and asked for assistance, leading employees of Cassano Marble to visit Plaintiffs' home in an attempt to fix the issue. *Id.* The installers attempted to clean the stains with acetone, but the stains remained. *Id.* Cassano Marble alerted Caesarstone to the issue, which responded (through a Warranty Specialist) that there was little to be done since the finish was concrete, which took more effort to clean than a normal polish product. *Id.* ¶ 19. Cassano Marble relayed this message to Plaintiffs. *Id.*

    On or around September 22, 2023, Boldt sent photos of the stains to a customer specialist at IKEA who stated that she would speak with Caesarstone about the defect. *Id.* ¶ 20. On or around

---

[2] All facts stated herein are taken from the allegations in Plaintiffs' Complaint unless otherwise indicated. ECF No. 1 ("Compl."). For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they are true.

October 18, 2023, the IKEA customer specialist emailed Boldt the contact information of a third-party that Caesarstone recommended for cleaning the countertop, but Plaintiffs would have to pay for the out-of-pocket cleanings. *Id.* To date, Plaintiffs have not received a permanent repair to the Defect under warranty and the countertops continue to exhibit the Defect. *Id.* ¶ 21.

### B. Procedural History

On March 31, 2024, Plaintiffs filed the instant lawsuit alleging causes of action against Defendants on behalf of themselves and putative class members for: (1) Violation of California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750, *et seq.*); (2) Violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, *et seq.*); (3) Breach of the Implied Warranty under the Song-Beverly Consumer Warranty Act ("Cal. Civ. Code § 1790, *et seq.*); (4) Breach of Implied Warranty under California law; (5) Breach of Implied Warranty under the Magnuson-Moss Warranty Act ("MMWA") (15 U.S.C. § 2303, *et seq.*); (6) Fraudulent Concealment/Omission; and (7) Unjust Enrichment.

On July 11, 2024, Defendants filed their respective Motions to Dismiss. ECF Nos. 17 ("Caesarstone Motion"); 20 ("IKEA Motion"). On August 23, 2024, Plaintiffs filed their oppositions. ECF Nos. 23 ("Caesarstone Opp."); 24 ("IKEA Opp."). On September 12, 2024, Defendants filed their replies. ECF Nos. 25 ("Caesarstone Reply"); 26 ("IKEA Reply").

## II. <u>Applicable Law</u>

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Id.*

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### III. Discussion

#### A. The Court lacks jurisdiction over Plaintiffs' class-wide MMWA claim.

The Court first addresses IKEA's jurisdictional argument for Plaintiffs' class-wide MMWA claim. IKEA Motion at 8. For a district court to exercise jurisdiction over a class action under the MMWA, there must be at least one-hundred named plaintiffs. *See* 15 U.S.C. § 2310(d)(3)(C). IKEA notes that there are only two named Plaintiffs here. Plaintiffs represent that "courts are still divided as to whether a class action may survive dismissal under MMWA with less than one-hundred named plaintiffs by using the Class Action Fairness Act ('CAFA') as an independent class-action basis." IKEA Opp. at 9. However, the Ninth Circuit has affirmatively held that "CAFA may not be used to evade or override the MMWA's specific numerosity requirement." *Floyd v. American Honda Motor Co., Inc.*, 966 F.3d 1027, 1035 (9th Cir. 2020).[3] However, Plaintiffs have alleged the MMWA claim

---

[3] Although Plaintiffs appear to be arguing that this Court consider non-binding authority holding otherwise, this Court must follow the precedent set by the Ninth Circuit in *Floyd*. IKEA Opp. at 10.

"on behalf of themselves" and the class—therefore, although the Court finds that jurisdiction is lacking over the class-wide claim, there is no jurisdictional issue with Plaintiffs' individual claims under the MMWA. Accordingly, the Court GRANTS the IKEA Motion on this basis and dismisses the MMWA's class-wide claim at this stage.[4]

### B. Plaintiffs have sufficient standing to proceed at this stage.

IKEA argues that Plaintiffs do not have Article III standing to bring its claims on behalf of putative class members who do not reside in California, while Caesarstone argues that Plaintiffs cannot assert claims for alleged violations of California laws on behalf of a putative nationwide class. IKEA Motion at 9; Caesarstone Motion at 11. Caesarstone separately argues that Plaintiffs lack standing to assert claims regarding countertop models that they did not purchase. Caesarstone Motion at 14.

As a preliminary matter, the Court notes that the Complaint does not specify what state law Plaintiffs' fraud and unjust enrichment claims are brought under, nor what state law Plaintiffs intend to incorporate under their MMWA claim—thus the Court finds that the Complaint as is only alleges causes of action under California law. Accordingly, the Court limits Plaintiffs' fifth, sixth, and seventh causes of action to California law with leave to amend.

So construed, the Court finds that the purported standing questions raised by IKEA and Caesarstone are more appropriately addressed at the class certification stage. *See Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (in a case involving constitutional claims, adopting approach that "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded . . ."). In particular, where defendants challenge standing of a class representative on the ground that the facts of their alleged injuries differ from that of the passive

---

[4] Plaintiffs request leave to amend "in the event Plaintiffs can meet the 100-plaintiff requirement at a later date." IKEA Opp. at 11. The Court understands that Plaintiffs are not requesting leave to amend to meet this requirement at this stage, but will allow Plaintiffs leave to amend the class-wide MMWA claim prior to the deadline to amend pleadings that will be set by the Court's scheduling order.

class members, any such issues are relevant to class certification as opposed to standing. *Id.*[5] Here, given that the Court is only considering California claims that are alleged personally by the named plaintiffs, and there is no dispute as to the Plaintiffs' individual standing here, the Court finds standing satisfied.

**C.    Plaintiffs satisfied statutory notice requirements.**

Caesarstone moves to dismiss Plaintiffs' CLRA claim because although Plaintiffs provided notice of Caesarstone's alleged CLRA violation, Caesarstone argues that Plaintiffs did not provide it a reasonable opportunity to cure as required by the statute. Caesarstone Motion at 6; *see Benson v. Southern California Auto Sales, Inc.*, 239 Cal. App. 4th 1198, 1206 (2015) (noting that "Cal. Civ. Code § 1782(b)'s bar of an action if an appropriate remedy is given, or agreed to be given, to the consumer within 30 days after receipt of notice was to ensure that a consumer give a merchant an opportunity to correct the mistake").[6] Similarly, Caesarstone notes that under the MMWA, an action may not be brought "unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure . . ." 15 U.S.C. § 2310(e).

Here, Plaintiffs provided notice of the alleged Defect on December 5, 2023. ECF No. 17-3 ("Wong Decl.") Ex. 1. On January 3, 2024, Caesarstone responded and stated that it "den[ied] the allegations," but were "reviewing" the alleged issue, and requested photos and an on-site inspection. *Id.* Ex. 2. Plaintiffs did not respond to this correspondence or any follow-up communications, but proceeded to bring suit three months later. *Id.* ¶¶ 5, 6. Plaintiffs' position is that Caesarstone's response was not an appropriate remedy, because it denied the claims and wanted to review the issue before discussing the issue further. Caesarstone Opp. at 5. The Court finds that nothing in the plain

---

[5] Caesarstone cites *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012), but there, the Ninth Circuit conducted a choice of law analysis at the *class certification stage* and found that "[u]nder the facts and circumstances" of that case, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."

[6] Plaintiffs argue that their notice was not given under Section 1782(b), but rather 1782(c) which governs the requirements for demands made on behalf of a class. Caesarstone Opp. at 5. Caesarstone does not address this distinction in its reply, but regardless, the Court notes that 1782(c) has a similar requirement. Cal. Civ. Code § 1782(c)(2), (3) (requiring "an appropriate correction, repair, replacement, or other remedy" within a "reasonable time"). The Court does not find it necessary to reach the issue of whether Section 1782(b) is inapplicable to notices of a class action given its finding herein.

language of either the CLRA or the MMWA requires a response from Plaintiffs to satisfy the notice requirement. Caesarstone was notified of the defect, and did not give a remedy nor agree to do so under either Section 1782(b) or (c). The statutes do not require giving an opportunity to investigate the merits of the claim, but rather an opportunity to cure. Here, the opportunity to cure was the time frame before Plaintiffs brought the lawsuit in March of 2024, almost four months after the initial notice.[7] Therefore, this is unlike the case cited by Caesarstone, where one plaintiff filed suit on "the same day as he gave notice," and others "filed suit a mere four days after giving notice." *See In re Iphone 4S Consumer Litigation*, 2014 WL 589388, at *8 (N.D. Cal. Feb. 14, 2014).

Accordingly, the Court finds that Plaintiffs have satisfied their notice requirements under the CLRA and the MMWA.

**D. Plaintiffs sufficiently allege claims based on fraud against Caesarstone, not IKEA.**

Defendants also both argue that Plaintiffs have failed to allege their UCL, CLRA, and fraud claims (1) Plaintiffs' allegations are not pleaded with sufficient specificity under Rule 9(b) as they lump the actions of Caesarstone and IKEA together and (2) Plaintiffs have not pleaded reliance on any misrepresentation or omission. IKEA Motion at 11; Caesarstone Motion at 8.

      i. <u>Plaintiffs' allegations are pleaded with sufficient specificity.</u>

Under Rule 9(b), claims that include allegations of fraud requires more specificity than the minimal notice pleading requirements of Rule 8(a). *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764–65 (cleaned up). However, the rule "may be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.

---

[7] The parties dispute whether Section 1782(b) requires a "reasonable" opportunity to cure as opposed to just 30 days, but the Court finds this point moot as there is no argument that the time period between the notice and the filing of the lawsuit would not constitute a "reasonable" opportunity to cure. Further, the Court notes that to the extent Plaintiffs argue Section 1782(c) applies, there is no set time frame to cure but rather provides a prospective defendant merely a "reasonable time" to give appropriate remedies.

1989). Caesarstone points to a number of instances where Plaintiffs allege actions made by "Defendants,"[8] but the Court finds Plaintiffs have sufficiently specified the acts of Caesarstone and IKEA elsewhere in the Complaint. In particular, Plaintiffs have distinguished the acts of Caesarstone and IKEA and their respective agents wherever it appeared feasible to do so in the Complaint and do not merely lump Defendants together for all purposes. *See, e.g.,* Compl. ¶¶ 15, 17, 18, 19.

With regards to the specific omission that the countertops would be more difficult to clean than a polished finish, it would appear reasonable to allege that the omissions came from both IKEA, where the Plaintiffs bought the countertops, and the manufacturer, Caesarstone. Plaintiffs allege they were not told this during the purchase, where they interacted with IKEA's agents, and also were not made aware of this through any of the documentation that they were given relating to Caesarstone's product. *Id.* ¶¶ 15, 17. It would be a reasonable inference that any documentation or information about Caesarstone's product Plaintiffs were given or told through IKEA's agents came from the manufacturer—in this case, Caesarstone. With regards to the other instances where Plaintiffs generally allege actions attributable to both IKEA and Caesarstone, it is reasonable to infer that Plaintiffs actually mean both Defendants (and therefore are not just merely lumping them), or that Plaintiffs do not know which Defendant it was (and in these instances, Plaintiffs would not be in a position to be able to distinguish at this stage). As there are basically only two defendants in this case—the manufacturer and the seller—the Court finds that the allegations are specific enough to satisfy the purpose of Rule 9(b) in giving Defendants notice of the specific conduct from which they must defend against. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

          ii.   <u>Plaintiffs have sufficiently pleaded an omission against Caesarstone, not IKEA.</u>

Caesarstone also argues that Plaintiffs have failed to prove reliance on any omission from Caesarstone, as they were not aware of Caesarstone's involvement until after they purchased the product. Therefore, the Complaint does not specifically identify any statements or representations from Caesarstone prior to Plaintiffs' purchase of the product. However, courts have recognized that

---

[8] Caesarstone Motion at 8–9.

fraud by omission logically does not naturally give rise to allegations as detailed as fraud through an affirmative misrepresentation. *See, e.g.*, *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. July 3, 2007) ("Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim."). Here, the crux of Plaintiffs' allegations is that no one, including Caesarstone, made them aware that the countertops would be more difficult to clean than countertops with a polished finish throughout the whole process leading up to their purchase. This is sufficiently pleaded, and the Court does not find more allegations necessary to show that Caesarstone did not do something.

Despite the alleged existence of the omission, IKEA argues that the allegations are insufficient to support its knowledge of the defect (and therefore, cannot support that it had any duty to disclose the defect). *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) (noting that under the CLRA, a plaintiff must "sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss"). Plaintiffs appear to rely on their allegations regarding customer complaints on IKEA and Caesarstone's websites, that IKEA's showroom shows the countertop through samples, and that IKEA's installers stated that the countertops were "delicate." IKEA Opposition at 18. With regards to the samples, there is no allegation that the samples shown in IKA showrooms were defective—presumably, this is why Plaintiffs were not aware of the defects. The Court notes that while under Rule 9(b) knowledge "may be alleged generally," the Ninth Circuit has noted that some courts have "have expressed doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of a defect." *Wilson*, 668 F.3d at 1147. The Ninth Circuit did not hold that customer complaints could not support such an inference but indicated that to the extent the allegations do not sufficiently implicate a defendant's awareness of the complaints at the time of the sale, this would be a proper basis for dismissal. *Id.* at 1148. Here, Plaintiffs have alleged the existence of at least three customer complaints on IKEA's website—however, two of them were after Plaintiffs' date of purchase, and there is no indication IKEA responded to or acknowledged the one prior to Plaintiffs' purchase. Compl. ¶¶ 52, 53, 54. The Court finds this sole complaint along with one verbal statement

from an installer from IKEA's fabricator to be insufficient to impute knowledge on IKEA's part.[9] Accordingly, the Court finds grounds for dismissal as to Plaintiffs' claims against IKEA with leave to amend.[10]

While the Court finds that the alleged omission is sufficient to support Plaintiffs' UCL, CLRA, and fraud by omission claims against Caesarstone on its own, to the extent Plaintiffs are relying on affirmative misrepresentations by IKEA or Caesarstone to support their claims, the Court does not find those to have been sufficiently pleaded. Rather, the Complaint does not specify any particular communications or representations by IKEA or Caesarstone that Plaintiffs relied on in purchasing the countertops. For example, there are no allegations describing the nature of the interactions between Plaintiffs and any IKEA salespersons, what they were told (if anything) when making the purchase, or what (if anything) they saw or read about the products prior to the purchase.[11] Accordingly, if Plaintiffs wish to rely on affirmative misrepresentations to support their claims as they indicate in their opposition (Caesarstone Opp. at 13), the Court will grant leave to amend for Plaintiffs to allege affirmative misrepresentations by IKEA and/or Caesarstone that Plaintiffs relied on.

///

---

[9] Caesarstone did not move to dismiss on the basis of lack of allegations regarding its knowledge, but the Court regardless finds Caesarstone's knowledge supported based on the allegations. In particular, the Complaint lists a number of customer complaints from Caesarstone's page on a consumer website as early as 2015, and Caesarstone's own Warranty Specialist represented that the concrete finish takes more effort to clean. Compl. ¶¶ 19, 55–60.

[10] IKEA also separately moved to dismiss Plaintiffs' UCL claims based on a theory of unlawful or unfair business practices. As the Court has found dismissal warranted here, the Court need not reach IKEA's separate UCL argument.

[11] Although Plaintiffs allege that Caesarstone and IKEA made certain representations on their websites, there is no allegation that Plaintiffs themselves ever saw these representations (and therefore they could not have been relied on). However, the Court notes that statements about the countertops being "resistant to stains, scratches, and moisture" would not appear to be mere puffery, as they are not vague statements attesting to the durability of the product but actually specify the ways in which the product is supposed to be durable. *See* IKEA Motion at 13; *see Cook, Perkiss, and Liehe, Inc. v. Northern California Collection Service Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (noting that "misdescriptions of specific or absolute characteristics of a product are actionable"). And, Plaintiffs' allegations are not that they were misled into believing the countertops *never* stained—merely that they were misled into how easily the countertops would stain from normal use. *See* IKEA Motion at 13.

### E. Plaintiffs sufficiently allege their implied warranty claims.

To plead a breach of the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act[12] and California Commercial Code Section 2314(1), a plaintiff "must show that the product did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003). Defendants move to dismiss Plaintiffs' implied warranty claims on the basis that the countertops can still serve their basic function, and the alleged defect is merely an aesthetic issue. Caesarstone Motion at 12; IKEA Motion at 17. Drawing all inferences in favor of the Complaint, as the Court must at this stage, the Court finds it a reasonable inference that the countertops are not fit for normal use, because Plaintiffs allege that they cannot put items on the countertops—the basic function of countertops. Plaintiffs also argue that the countertops were "not of the same quality as those generally acceptable in the trade" and that they "did not measure up to the promises or facts stated on the container or label."[13] *See* Cal. Civil Jury Instruction 3210 (listing essential factual elements of a breach of the implied warranty of merchantability). Here, the allegations support that the countertops were more "delicate" and took "more effort to clean than the normal polish product," making it not the same quality as other countertops. Compl. ¶¶ 18, 19. Moreover, both Caesarstone and IKEA advertise the products as not being prone to stains.[14] *Id.* ¶¶ 43, 44. Accordingly, the Court finds that Plaintiffs have sufficiently pleaded their implied breach of warranty claims.

/ / /

/ / /

---

[12] IKEA argues that it is not a "distributor" under the definition of the Song-Beverly Act, but the Court notes that to the extent this is true, IKEA would still no doubt be liable as a "retailer" within the meaning of Cal. Civ. Code § 1791(l).

[13] Although Caesarstone argues that representations made by a defendant "have no bearing" on the implied warranty of merchantability, California courts have approved CACI 3210 which allows for finding a breach of such if the product does not "conform to the promises or affirmations made on the container or label." *See Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007).

[14] It is not clear that these would properly fall under the category of promises or affirmations on the container or labels of the countertops themselves for purposes of a breach of implied warranty, but as the Court finds Plaintiffs have sufficiently alleged a breach based on other grounds, it need not make a finding on this issue.

11

**F.     Plaintiffs' unjust enrichment claim should be construed as a quasi-contract claim against Caesarstone, not IKEA.**

Defendants move to dismiss Plaintiffs' unjust enrichment claim on the basis that unjust enrichment is not a standalone cause of action under California law, and it is duplicative of the restitution Plaintiffs seek under the UCL claim. Caesarstone Motion at 14; IKEA Motion at 19. Plaintiffs do not contest this point, instead arguing that this Court should construe the unjust enrichment claim "as a quasi-contract claim seeking restitution." *See Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). IKEA argues that the Court should not do this as the express warranty bars any action based on quasi-contract. Although it does not appear that any of Plaintiffs' claims specifically rely on a breach of any express warranty, the Court notes that Plaintiffs' allegations request finding privity of contract between Plaintiffs and Defendants and/or finding Plaintiffs to be intended beneficiaries of contracts, who are "entitled to the benefit of their bargain." Compl. ¶¶ 147–149. Regardless, even to the extent that Plaintiffs' allegations rely on an express breach of contract, the Court notes that a plaintiff may allege claims in the alternative at the pleading stage. *See, e.g., Jamerson v. UMG Recordings, Inc.*, 2014 WL 12588624, at *14, n. 63 (C.D. Cal. Apr. 14, 2014) (listing district court cases that have held that plaintiffs are allowed to simultaneously plead unjust enrichment and breach of contract claims). Moreover, Defendants provide no argument as to why Plaintiffs should not be allowed to seek "an injunction and non-restitutionary disgorgement" of profits under this claim as pleaded. *See* IKEA Opp. at 25. Thus, the Court will construe the claim as a quasi-contract claim. Nevertheless, as Plaintiffs' unjust enrichment claim against IKEA specifically is based on "IKEA's failure to disclose the defects and such other claims as provided in the Complaint," the Court finds that the claim against IKEA should be dismissed with leave to amend per its findings in Section III.D, *supra*.

**IV.     Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Defendants' Motions to Dismiss (ECF Nos. 17, 20) are GRANTED IN PART;
2. Plaintiffs' class-wide allegations with regards to their MMWA Breach of Implied Warranty Claim (Fifth Cause of Action) are dismissed;

3. Plaintiffs' CLRA, UCL, and Fraud claims (First, Second, and Sixth Causes of Action) are dismissed as to IKEA only with leave to amend; and

4. Plaintiffs' unjust enrichment claim (Seventh Cause of Action) under California law is dismissed as to IKEA only with leave to amend.

IT IS SO ORDERED.

Dated: December 24, 2024

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge